**Wilbert HERRING, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 73-2672.**

United States Court of Appeals, Fifth Circuit.

March 15, 1974.

Rehearing and Rehearing En Banc Denied April 16, 1974.

William T. Armstrong, Staff Counsel for Inmates, Weldon, Tex., Harry H. Walsh, Huntsville, Tex., James H. Randals, Staff Counsel for Inmates, Huntsville, Tex., for petitioner-appellant.

Thomas M. Pollan, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BELL, THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

In this § 2253 habeas corpus appeal, Herring contends that he unknowingly and involuntarily pled guilty to a robbery charge because his appointed counsel was too poorly prepared to give him effective assistance in deciding how to plead. We agree and order that the writ be granted.

This case began with a May 30, 1962, jailbreak at the Tom Green County (Texas) Jail. When the jailer entered a cell to aid a bleeding inmate, three inmates rushed forward, grabbed his keys, beat him and escaped, leaving the keys in the jail's back door. The State charged Herring, one of the escapees, with robbery by assault on the theory that he had taken the jailer's keys by force. The trial court appointed Herring's lawyer on the day set for trial, July 17, 1962. He pled guilty the same day.

Herring argues that his poorly prepared appointed counsel failed to provide information essential to a knowing and voluntary plea. At the time of his plea, Texas law provided a maximum prison term of two years for aggravated assault [1] and five years for escape,[2] a total of seven years. But the State instead charged him with robbery by assault,[3] which carries a maximum penalty of life imprisonment. Herring contends that any reasonably competent lawyer would have known that he had not committed robbery because the Texas Court of Criminal Appeals has ruled that robbery requires a taking with the intent to keep the booty permanently, not temporarily. That the escapees left the keys in the jailhouse door is conclusive evidence that they took the keys for temporary use only. But Herring's lawyer failed to tell him that his taking the keys probably could not be construed as robbery. Consequently Herring entered

---

1. Article 1148 of the Texas Penal Code provided:

   The punishment for an aggravated assault or battery shall be a fine not less than Twenty-five Dollars ($25) nor more than One Thousand Dollars ($1,000), or imprisonment in jail not less than one (1) month nor more than two (2) years, or both such fine and imprisonment.
   Vernon's Tex.Penal Code Ann. art. 1148 (1961).

2. Article 353b of the Texas Penal Code provided in pertinent part:

   If a prisoner confined in the penitentiary or while he is permitted to be at large as a trusty, or a prisoner confined in any other prison, or while in the lawful custody of any officer shall voluntarily, with or without force, escape, he shall upon conviction for such escape be confined in the penitentiary for not less than two (2) nor more than five (5) years.
   Tex.Penal Code Ann. art. 353b, § 2 (1952).

3. Article 1408 of the Texas Penal Code provided:

   If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death or by confinement in the penitentiary for any term not less than five years.
   Tex.Penal Code Ann. art. 1408 (1953).

a plea of guilty in exchange for a twenty-five-year sentence. When he realized that his escape probably should have brought a maximum term of seven years, the bargain lost its luster and he sought habeas corpus relief.

### I.

The Sixth and Fourteenth Amendments gave Herring the right to effective assistance of counsel. This circuit set its standard for determining whether counsel has provided constitutionally satisfactory services in MacKenna v. Ellis:

> We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

MacKenna v. Ellis, 5th Cir. 1960, 280 F. 2d 592, 599, cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. Since 1960 we have applied the "reasonably effective assistance" standard many times.[4]

In 1965, however, a panel of this circuit seemed to adopt a different standard. In Williams v. Beto the court said:

> It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. [Citations omitted.]

Williams v. Beto, 5th Cir. 1965, 354 F.2d 698, 704. For several years following 1965, *Williams'* "farce-mockery" language appeared in our opinions with some frequency.[5] But a close reading of Williams v. Beto reveals that that opinion did not intend to adopt the farce-mockery test in lieu of the reasonably effective assistance standard. The passage quoted above, after stating the general rule, cited eleven cases from other circuits as support; it cited no cases from this circuit. Thus the panel was saying that the farce-mockery test was the general rule in other circuits but not in ours. In the next paragraph the panel said:

> This court has considered lack of effective counsel cases before and has laid down standards which we now reaffirm and again call to the attention of the Bar of this Circuit. We have not hesitated to grant habeas corpus relief when justified. Cf. Pineda v. Bailey, 5 Cir., 340 F.2d 162 (1965); Johnson v. United States, 8 Cir., 329 F.2d 600 (1964); MacKenna v. Ellis, 5 Cir., 280 F.2d 592 (1960).

Williams v. Beto, supra, 354 F.2d at 705.

The *Johnson* case cited above had nothing to do with assistance of counsel; there the sole issue was sufficiency of the evidence. *MacKenna*, of course, instituted the reasonably effective assistance test, and *Pineda* applied that test. Therefore the paragraph quoted above

---

4. *E. g.,* United States v. Woods, 5th Cir. 1973, 487 F.2d 1218; United States v. Beasley, 5th Cir. 1973, 479 F.2d 1124; Sloan v. Wainwright, 5th Cir. 1972, 469 F.2d 390; Williams v. United States, 5th Cir. 1971, 443 F.2d 1151; United States v. Rubin, 5th Cir. 1970, 433 F.2d 442, cert. denied, 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228; Lamb v. Beto, 5th Cir. 1970, 423 F.2d 85, cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84; Caraway v. Beto, 5th Cir. 1970, 421 F.2d 636; Bendelow v. United States, 5th Cir. 1969, 418 F.2d 42; Calloway v. Powell, 5th Cir. 1968, 393 F.2d 886; Brown v. Beto, 5th Cir. 1967, 377 F.2d 950; Pineda v. Bailey, 5th Cir. 1965, 340 F.2d 162.

5. *E. g.,* Cooks v. United States, 5th Cir. 1972, 461 F.2d 530; United States v. Zarzour, 5th Cir. 1970, 432 F.2d 1; United States v. Long, 5th Cir. 1969, 419 F.2d 91; Foster v. Beto, 5th Cir. 1969, 412 F.2d 892; Mosley v. Smith, 5th Cir. 1968, 404 F.2d 346; White v. McHan, 5th Cir. 1967, 386 F.2d 817; Quarles v. Dutton, 5th Cir. 1967, 379 F.2d 934; Odom v. United States, 5th Cir. 1967, 377 F.2d 853, writ of cert. dismissed, 400 U.S. 23, 91 S.Ct. 112, 27 L.Ed.2d 122; Bell v. Alabama, 5th Cir. 1966, 367 F.2d 243, cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788; Busby v. Holman, 5th Cir. 1966, 356 F.2d 75.

reaffirmed the *MacKenna* standard for effective assistance of counsel. *Williams* did not replace MacKenna's reasonably effective assistance standard with a farce-mockery test.

The two tests, moreover, can be reconciled. The governing standard is reasonably effective assistance. One method of determining whether counsel has rendered reasonably effective assistance is to ask whether the proceedings were a farce or mockery. The farce-mockery test is but one criterion for determining if an accused has received the constitutionally required minimum representation (reasonably effective assistance). *See* Bendelow v. United States, 5th Cir. 1969, 418 F.2d 42, 50, cert. denied, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387. One may receive ineffective assistance of counsel even though the proceedings have not been a farce or mockery. United States v. Edwards, 5th Cir. 1974, 488 F.2d 1154 at pp. 1164, 1165 [1974]. Other circuits may adhere solely to the farce-mockery test, but we do not. Pennington v. Beto, 5th Cir. 1971, 437 F.2d 1281, 1285–1286; Brown .v. Beto, 5th Cir. 1967, 377 F.2d 950, 957–958. Our standard is reasonably effective assistance. ·

■■■ Reasonably effective assistance is an easier standard to meet in the context of a guilty plea than in a trial, but counsel still must render competent service. *See* Tollett v. Henderson, 1973, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235. It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. Lamb v. Beto, 5th Cir. 1970, 423 F.2d 85, 87, cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84. *See* Walker v. Caldwell, 5th Cir. 1973, 476 F.2d 213; Colson v. Smith, 5th Cir. 1971, 438 F.2d 1075; O'Neal v. Smith, 5th Cir. 1970, 431 F.2d 646. He must actually and substantially assist his client in deciding whether to plead guilty. Walker v. Caldwell, *supra*, 476 F.2d at

224. It is his job to provide the accused an "understanding of the law in relation to the facts." *Id*. at 218. The advice he gives need not be perfect, but it must be reasonably competent. Colson v. Smith, *supra*, 438 F.2d at 1081 n. 5. His advice should permit the accused to make an informed and conscious choice. *Id*. at 1079. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.[6]

## II.

Having reviewed this circuit's standard for effective assistance of counsel, we turn now to Herring's case. He alleges, and the State does not deny, that his attorney was appointed on the day of the trial and spent a negligible amount of time familiarizing himself with his client's case. The lawyer's lack of preparation, contends Herring, deprived him of effective assistance of counsel and caused him to enter an involuntary guilty plea.

■■ While counsel must devote sufficient time to ensure an adequate defense in order to render effective assistance, it is the rule in this circuit that ". . . time spent [in preparation] is only one of the elements to be considered and the totality of the facts may not be over-ridden by a judicial stop watch." Doughty v. Beto, 5th Cir. 1968, 396 F.2d 128, 130. *Accord,* Woodard v. Beto, 5th Cir. 1971, 447 F.2d 103, cert. denied, 404 U.S. 957, 92 S.Ct. 325, 30 L.Ed.2d 275; Evans v. Beto, 5th Cir. 1969, 415 F.2d 1129. Therefore appellant must show more than counsel's brief preparation period. Appellant attempts to meet this requirement by arguing that if counsel had made a minimal ef-

6. "Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it if necessary in order meaningfully to advise the accused of his options." Windom v. Cook,, 5th Cir. 1970, 423 F.2d 721, *quoting from* Calloway v. Powell, 5th Cir. 1968, 393 F.2d 886, 888.

fort to prepare himself, he would have discovered that taking jail keys for temporary use does not fit the Texas definition of robbery.

We think Herring is correct. Even a cursory perusal of two cases from the Texas Court of Criminal Appeals provides dramatic evidence that Herring's lawyer prepared himself too poorly to give effective assistance. In Bailey v. State, 139 Tex.Cr.R. 260, 139 S.W.2d 599 (1904), the State had charged the accused with robbery because he had taken a jailer's keys and hidden them in his bunk. In reversing his conviction the court said that robbery requires ". . . an intent to permanently appropriate the property and to deprive the owner thereof of its value." 139 S. W.2d at 600. The court believed that one could not infer that Bailey intended to keep the keys permanently because they had no other use than aiding his escape. In a later case the court upheld the robbery conviction of an escapee who did not leave the keys behind but instead kept them in his possession after making his departure from the jail. Fitzgerald v. State, 160 Tex.Cr.R. 414, 271 S.W.2d 428 (1954). The court found that Fitzgerald's keeping the keys distinguished his case from *Bailey.* His actions proved his intent permanently to appropriate the keys.

Since Herring left the keys in the jail door, one can make a strong argument that he conclusively demonstrated his intent *not* to keep them permanently. Without an intent to keep the keys permanently, his actions cannot constitute robbery as defined by *Bailey* and *Fitzgerald.* Given the strong parallel between Herring's case and *Bailey,* we must conclude that reasonably effective counsel either would have advised Herring to plead not guilty or, at the very least, would have explained to him the Texas law of robbery and the pronouncement in *Bailey.* *See* Cooks v. United States, 5th Cir. 1972, 461 F.2d 530, 532.

By failing to advise Herring how the facts of his case related to the Texas law of robbery, counsel made certain that his client's plea could not be knowingly and voluntarily entered.

The judgment of conviction is vacated. The case is reversed and remanded to the district court with directions to issue the writ of habeas corpus discharging appellant, subject to the right of the State, if it wishes to do so, to try him on the indictment here involved within ninety days of the time the mandate of this court reaches the district court. Should the State desire to try appellant, he will be permitted to withdraw his guilty plea and plead anew.

Reversed and remanded.