**Charles Wesley O'BERRY**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida.**

No. FL 74-249-Civ-JLK.

United States District Court,
S. D. Florida,
Ft. Lauderdale Division.

May 8, 1975.

---

Stephen R. Koons, Asst. Atty. Gen., Miami, Fla., for plaintiff.

Daniel S. Pearson, Miami, Fla., for defendant.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNLESS THE STATE ELECTS A RETRIAL

JAMES LAWRENCE KING, District Judge.

Charles Wesley O'Berry seeks a writ of habeas corpus on the ground that his conviction for rape was constitutionally defective in two respects: first, because of the alleged incompetence of counsel; and second, because of the admission of evidence which was obtained from an allegedly unlawful search. Having considered the record and being fully advised in the premises, the court finds and concludes that the admission of evidence garnered in contravention of the Fourth Amendment requires the issuance of the Great Writ unless the State of Florida elects to retry the petitioner within a reasonable period of time from the entry of this order.

O'Berry was convicted in late 1969 for twice raping the same woman. The following is a synopsis of the prosecution's version of the case. On the evening of May 12, 1969, at approximately 11:30 p.

m., a young woman was accosted on her way home from work by a man in a 1961 white Ford Falcon. She was forced at gunpoint to enter the car, was driven to a deserted spot and raped. She was then driven about for some twenty five minutes and was raped again, this time in the back seat of the Falcon.

After being abandoned by the rapist, the woman reported the crimes to the local police. Based upon the information she furnished, the police arrested O'Berry at his home on May 13, 1969. Parked in his driveway was a 1961 white Falcon which was towed to a police storage compound. The next day a detective entered the interior of the automobile and inspected it for fingerprints. Although no identifiable prints were found, he did discover that the rear portion of the interior had been wiped with a damp cloth. To be more specific, he found a number of wipe marks which he testified were the result of a recent wiping of the back seat.

The inspection of the automobile was done without a warrant, but no objection to the fruits of the search, the detective's testimony was made at the trial. The petitioner now contends that the warrantless search was unreasonable, and that the admission of the tainted testimony entitles him to a new trial. He argues that this case is controlled by the decision of the United States Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971).[1]

▆ Because the reasonableness of a search depends on the totality of the factual situation, it is a rare case in which the Supreme Court has previously ruled on a virtually identical set of facts. In all material respects, however, this case is the same as *Coolidge*. The police arrested a suspect, impounded his car, and without the detached judgment of probable cause by a magistrate, searched the interior of the car. In an attempt to avoid the *Coolidge* rationale, the State of Florida suggests that other auto search cases apply to this situation. More specifically, the respondent contends that two other cases in which the Supreme Court upheld warrantless searches are dispositive of the present case. In each case, however, there are significant factual differences which destroy their precedential utility. Unlike Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), there was never a danger that O'Berry's car would be removed from the custody of the police, hence there was no "fleeting target" exigency to justify a warrantless search. Unlike Cooper v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), there is no state forfeiture procedure which would excuse a police search for evidence in such a proceeding.

The exceptions to the warrant requirement are inapplicable in this case. The "search incident to arrest" theory has no bearing on this case since the search was remote in both time and place from O'Berry's arrest. *Preston, supra* at 367–68. The "plain view" doctrine has no application both because the detective had to have been inside the car to form the opinion that the back seat had recently been wiped down, and because the discovery was by no means inadvertent. *Coolidge, supra*, 403 U.S. at 469, 91 S.Ct. 2022. No other exceptions

---

1. It should be noted that the facts search in the case *sub judice* occurred before the decision in *Coolidge*, and that there might be a question of the retroactivity of that decision. However, the question of whether a decision should be given only prospective application turns on whether the Supreme Court announces a "new rule." United States v. Miller, 492 F.2d 37 (5th Cir. 1974). Such is not the case with *Coolidge* since the Court rendered only the latest in a series of decisions in which a warrantless automobile search was condemned. *See, e.g.* Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

have been brought to the attention of the court which would lead to a different constitutional conclusion concerning the warrantless search of O'Berry's car.

■ The State of Florida suggests two other reasons why the petition for habeas relief should not be granted. First the State contends that because the evidence was not objected to at trial, O'Berry cannot now assign the admission of the testimony as error. Absent any indication of a deliberate by-pass or strategic decision not to raise the issue, there is no reason why this court should not reach the merits of the claim. Fay v. Noia, 372 U.S. 391, 438–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

■ The contention pressed most strongly by the State is that even if it was error to allow the testimony, the error was harmless within the meaning of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The *Chapman* test is whether there is a reasonable possibility that the error may have contributed to the conviction. The burden is upon the beneficiary of the constitutional error to prove beyond a reasonable doubt that the error did not contribute to the verdict obtained. Fahy v. Connecticut, 375 U.S. 85, 84 S. Ct. 229, 11 L.Ed.2d 171 (1963).

■ In this case, the State asserts that the detective's testimony was "trivial." The record cannot support that conclusion. The prosecution established that the young woman had been raped, so the question put to the jury was whether O'Berry was the perpetrator of the crime. She testified that she did not know O'Berry before the night of the incidents, and that he was the rapist. He claimed that they had previously had sexual intercourse, but that he had not seen her at all the night of the crime. The *only* evidence in the record to corroborate the prosecution's version of the case was the detective's testimony concerning the recent wiping of the back seat, from which the jury could infer that O'Berry had hoped to erase any evidence of the sexual encounter. The following excerpts from the closing arguments of counsel reflect the importance of the detective's testimony.

DEFENSE COUNSEL:

Did he find any blood? I asked him that question. His answer was no, I did not. And yet we have heard [the victim] testify that the second alleged rape was undertaken in the rear seat of the car on the seat, and during a menstrual cycle by her own testimony. And there is no blood in that car. There is nothing to indicate that car was—the girl in that car at this time, the time of this event, nothing.

Transcript at 388–89.

PROSECUTOR:

And he was asked did you find any [fingerprints] in the back seat? No. Why not? It had been wiped down with a damp rag. There was nothing back there.

Transcript at 397.

Finally, it should be noted that petitioner's trial attorney attempted to minimize the damage of the detective's testimony by trying to get him to concede that the wiping may have taken place as long as two weeks before the search. The detective, however, refused to agree that the wipe marks were as much as two weeks old, and maintained that they were "recent." Transcript at 274–77. On this record, the court must conclude that there was a reasonable possibility that the challenged evidence did contribute to the conviction, and that the constitutional error cannot be dismissed as harmless.

■ Turning briefly to the other issue raised in the habeas petition, the court is of the view that the claim of incompetence of counsel is without merit. The test in the Fifth Circuit is whether O'Berry's appointed counsel rendered reasonably effective assistance. Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir. 1974); Herring v. Estelle, 491 F.2d

125 (5th Cir. 1974). The most serious charge leveled at O'Berry's trial lawyer is that he stated in closing argument that the victim's purse had been found in the petitioner's car. Although she testified that she had left her purse in the car, no further evidence of where the purse was found was before the jury. O'Berry now contends that by conceding that the purse was found in his car, his counsel undermined his alibi defense. In spite of this misstatement, the court is satisfied that defense counsel's performance was well within the parameters of professional competence.

Because the petitioner's trial was fatally flawed by the violation of his Fourth Amendment rights, it is

Ordered and adjudged that the petition of Charles Wesley O'Berry for a writ of habeas corpus be and the same is hereby granted *unless* the State of Florida affords him a new trial within a reasonable time from the entry of this order.